**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Case No. 14-cv-8400 |
| | ) |
| v. | ) Judge James B. Zagel |
| | ) |
| JDI DATING, LIMITED, a United Kingdom | ) |
| private limited company; and | ) |
| | ) |
| WILLIAM MARK THOMAS, individually and | ) |
| as an owner, officer, or director of JDI DATING, | ) |
| LIMITED, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**STIPULATED ORDER FOR PERMANENT**
**INJUNCTION AND OTHER EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed its Complaint

for Permanent Injunction and Other Equitable Relief ("Complaint") in this matter, pursuant to

Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b)

and 57b, and Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C.

§ 8404. The Commission and Defendants stipulate to the entry of this Stipulated Order for

Permanent Injunction and Other Equitable Relief ("Order") to resolve all matters in dispute in

this action between them.

**THEREFORE, IT IS ORDERED** as follows:

**FINDINGS**

1.　　This Court has jurisdiction over this matter.

1

2.     The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 4 of ROSCA, 15 U.S.C. § 8403, in connection with Defendants' marketing and sale of online dating services.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.     Defendants waive any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear their own costs and attorney fees.

5.     Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.     "**Billing Information**" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

2.     "**Charge**" or "**Charging**" includes causing Billing Information to be submitted for payment, including against a consumer's credit card, debit card, bank account, phone bill, or other account, or otherwise attempting to collect money or other consideration.

3.     "**Clear and Conspicuous**" or "**Clearly and Conspicuously**" means as follows:

a.     In print communications, the disclosure shall be presented in a manner that stands out from the accompanying text so that it is sufficiently prominent, because of its

2

type size, contrast, location, or other characteristics, for an ordinary consumer to notice, read, and comprehend it;

      b.     In communications made through an electronic medium (such as television, video, radio, and interactive media such as the Internet, online services, and software), the disclosure shall be presented simultaneously in both the audio and visual portions of the communication. In any communication presented solely through visual or audio means, the disclosure shall be made through the same means through which the communication is presented. In any communication disseminated by means of an interactive electronic medium such as software, the Internet, or online services, the disclosure must be unavoidable. Any audio disclosure shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it. Any visual disclosure shall be presented in a manner that stands out in the context in which it is presented so that it is sufficiently prominent, due to its size and shade, contrast to the background against which it appears, the length of time it appears on the screen, and its location, for an ordinary consumer to notice, read, and comprehend it; and

      c.     Regardless of the medium used to disseminate it, the disclosure shall be in understandable language and syntax. Nothing contrary to, inconsistent with, or in mitigation of the disclosure shall be used in any communication.

    4.     "**Corporate Defendant**" means JDI Dating, Limited, ("JDI") and its successors and assigns.

    5.     "**Defendants**" means the Individual Defendant and the Corporate Defendant, individually or collectively.

6.      "**Individual Defendant**" means William Mark Thomas ("Thomas"), and by whatever other names he may be known.

7.      "**Negative Option Feature**" means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

8.      "**Person**" or "**Persons**" includes a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

9.      "**Plaintiff**" means the Federal Trade Commission ("FTC" or "Commission").

## ORDER

### I.

### PROHIBITION AGAINST MISREPRESENTATIONS

**IT IS ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

A.      That communications received by users of Defendants' online dating service are from the actual people depicted;

B.      That consumers who provide Defendants with Billing Information are purchasing a one-time paid subscription to Defendants' online dating service;

4

C.   The total cost to purchase, receive, or use the good or service;

D.   Any material restrictions, limitations, or conditions to purchase, receive, or use the good or service;

E.   Any material aspect of the performance, efficacy, nature, or central characteristics of the good or service; and

F.   Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the good or service.

## II.

### REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from:

A.   Before a consumer consents to enroll in Defendants' online dating service, failing to disclose Clearly and Conspicuously that not all communications consumers will receive are from actual people, but instead that some communications will be from computer generated virtual profiles, to the extent that is the case.

B.   Before Defendants obtain Billing Information from a consumer for any good or service which includes a Negative Option Feature, failing to disclose Clearly and Conspicuously:

1.   The name of the seller or provider of the good or service;

2.   A description of the good or service;

3.     That the consumer will continue to be charged unless the consumer takes steps to stop the recurring charges;

4.     The amount (or range of costs) of each charge;

5.     The length of any trial period;

6.     The deadline (by date or frequency) by which the consumer must act in order to stop all recurring charges; and

7.     The mechanism to stop any recurring charges.

C.     For any transaction involving a sale of a service to a consumer through a Negative Option Feature, within ten (10) days after the date of the sale, failing to send the consumer written confirmation of the transaction, either by email or first class mail, Clearly and Conspicuously identified as such in the email subject line or on the outside of the envelope. Such written confirmation shall include Clear and Conspicuous disclosure of all the information required by Subsection B of this Section and of the procedures by which consumers can cancel or obtain a refund.

D.     With respect to any current customer whom Defendants seek to continue to charge after the entry of this Order, within seven (7) days after the date of entry of this Order, failing to send such person written notice, either by email or first class mail, in a form approved by FTC counsel, that includes Clear and Conspicuous disclosure of all the information required by Subsection B of this Section and of the procedures by which such person can cancel or obtain a refund. Upon request, Defendants shall provide the FTC with information relating to the notice process, including, but not limited to, the persons to whom the notice was sent and the persons who canceled in response to the notice.

## III.

### EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from using Billing Information to obtain payment from a consumer, unless, prior to using such Billing Information to obtain payment, Defendants obtain the express informed consent of the consumer.

       A.     For all written offers with a Negative Option Feature (including over the Internet or other web-based applications or services), a consumer's express informed consent shall be obtained, prior to Defendants obtaining any Billing Information from consumers, through a check box, signature, or other substantially similar method, that consumers must affirmatively select or sign to accept the Negative Option Feature. Immediately adjacent to such check box, signature, or substantially similar method, Defendants shall disclose all costs associated with the Negative Option Feature, that the consumer is agreeing to pay such costs, the length of any trial period, and that consumers must cancel to avoid being charged. This disclosure shall contain no additional information and shall be Clear and Conspicuous in relation to any other information provided on the page relating to costs, risks, or obligations associated with any Negative Option Feature, including any terms referring to "free," "trial," and "processing fee."

       B.     For all oral offers including a Negative Option Feature, Defendants shall, in addition to disclosing the information identified in Subsection B of the Section entitled

"Required Disclosures" and prior to obtaining any Billing Information from a consumer, obtain affirmative and unambiguous oral confirmation that the consumer:

       1.     Consents to authorizing payment for any goods or services;

       2.     Understands that the transaction includes a Negative Option Feature; and

       3.     Understands the specific affirmative steps the consumer must take to prevent further charges.

Defendants shall maintain for three (3) years from the date of each transaction a voice recording of the entire transaction, including the prescribed statements set out in Subsection B of the Section entitled "Required Disclosures." Each recording must be retrievable by date and by the consumer's name, telephone number, or Billing Information and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

## IV.

### PROHIBITIONS CONCERNING REFUNDS AND CANCELLATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from:

      A.     Misrepresenting, expressly or by implication, any material term of any refund or cancellation policy or practice;

      B.     Failing to disclose, Clearly and Conspicuously, before a consumer consents to pay for such good or service through a Negative Option Feature, all material terms, limitations, and

conditions of any cancellation or refund policy, including, but not limited to, prohibitions against cancellations or refunds;

      C.    Failing to honor a cancellation or refund request that complies with any policy to make refunds or allow cancellations; and

      D.    Failing to provide a simple mechanism for a consumer to immediately stop any recurring charge for such good or service, at least one of which is as simple and easy to use as the mechanism the consumer used to start the charges.

      1.    For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Defendants must provide a mechanism for consumers to stop the recurring charge over the Internet or through such other web-based application or service.

      2.    For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Defendants must maintain a telephone number through which the consumer can easily cancel the product or service, seek a refund for past charges, and immediately stop all further charges. Defendants must assure that all calls to this telephone number shall be answered during normal business hours.

## V.

### PROHIBITION ON VIOLATING THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting

directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from violating ROSCA, 15 U.S.C. §§ 8401-8405, a copy of which is attached.

## VI.

### MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.     Judgment in the amount of Six Hundred Sixteen Thousand One Hundred and Sixty Five Dollars ($616,165) is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B.     Defendants are ordered to pay to the Commission Six Hundred Sixteen Thousand One Hundred and Sixty Five Dollars ($616,165), which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within seven (7) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

## VII.

### ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.     Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to

enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case. Notwithstanding anything to the contrary in this Order, Defendants expressly retain the right and ability to contest all or any facts alleged in the Complaint filed in this action in any proceeding to which the FTC is not a party.

C.       The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.       Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.       All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

11

## VIII.

### CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.      Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within twenty-one (21) days; and

B.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained prior to entry of this Order in connection with the advertising, marketing, promoting, offering for sale, or selling of online dating services. *Provided, however*, that Defendants may use customer information for any current customer if Defendants comply with Sections II.D, IV.C, and IV.D of this Order.

## IX.

### ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgements of receipt of this Order:

A.      Each Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgement of receipt of this Order sworn under penalty of perjury.

12

B.     For three (3) years after entry of this Order, Defendant Thomas, for any business that he, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, and Defendant JDI, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of this Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within thirty (30) days, a signed and dated acknowledgement of receipt of this Order.

## X.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.     One (1) year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.     Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the

13

involvement of any other Defendant (which Defendant Thomas must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, Defendant Thomas must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which Defendant Thomas performs services whether as an employee or otherwise and any entity in which Defendant Thomas has any ownership interest; and (c) describe in detail Defendant Thomas' involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For ten (10) years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

1.     Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Corporate Defendant, or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, Defendant Thomas must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any

14

business activity, including any business for which Defendant Thomas performs services whether as an employee or otherwise and any entity in which Defendant Thomas has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within fourteen (14) days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: *FTC v. JDI Dating, Limited*, FTC Matter No. 1323179.

## XI.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for ten (10) years after entry of the Order, and retain each such record for five (5) years. Specifically, Corporate Defendant and Defendant Thomas, for any business that Defendant Thomas,

individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

      A.      Accounting records showing the revenues from all goods or services sold;

      B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, telephone numbers, job title or position, dates of service, and (if applicable) the reason for termination;

      C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response; and

      D.      All records necessary to demonstrate full compliance with each provision of this Order, including Section II.D and all submissions to the Commission.

## XII.

### COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

      A.      Within fourteen (14) days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by the Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

      B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendant must permit representatives of the Commission to

interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.       The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIII.

### RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED**, this 30th day of October, 2014.

Honorable James B. Zagel
United States District Judge

17

SO STIPULATED AND AGREED:

FOR PLAINTIFF:

Date: _OCTOBER 27, 2014_

STEVEN M. WERNIKOFF
WILLIAM J. HODOR
Federal Trade Commission
Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 950-5600 [facsimile]
swernikoff@ftc.gov [e-mail, Wernikoff]
whodor@ftc.gov [e-mail, Hodor]
        Attorneys for Plaintiff
        FEDERAL TRADE COMMISSION


FOR DEFENDANTS:

Date: 3/9/2014

William Mark Thomas, CEO
as an officer of JDI DATING, LIMITED


Date: 8/9/2014

William Mark Thomas


Date: 9/11/2014

LAWRENCE G. WALTERS, ESQ.
Walters Law Group
195 W. Pine Avenue
Longwood, Florida 32750
(407) 975-9150 [telephone]
(407) 774-6151 [facsimile]
Larry@FirstAmendment.com [e-mail]
        Attorney for Defendant
        JDI DATING, LIMITED

ATTACHMENT A



S. 3386

# One Hundred Eleventh Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Tuesday,*
*the fifth day of January, two thousand and ten*

## An Act

To protect consumers from certain aggressive sales tactics on the Internet.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Restore Online Shoppers' Confidence Act".

**SEC. 2. FINDINGS; DECLARATION OF POLICY.**

The Congress finds the following:

(1) The Internet has become an important channel of commerce in the United States, accounting for billions of dollars in retail sales every year. Over half of all American adults have now either made an online purchase or an online travel reservation.

(2) Consumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business.

(3) An investigation by the Senate Committee on Commerce, Science, and Transportation found abundant evidence that the aggressive sales tactics many companies use against their online customers have undermined consumer confidence in the Internet and thereby harmed the American economy.

(4) The Committee showed that, in exchange for "bounties" and other payments, hundreds of reputable online retailers and websites shared their customers' billing information, including credit card and debit card numbers, with third party sellers through a process known as "data pass". These third party sellers in turn used aggressive, misleading sales tactics to charge millions of American consumers for membership clubs the consumers did not want.

(5) Third party sellers offered membership clubs to consumers as they were in the process of completing their initial transactions on hundreds of websites. These third party "post-transaction" offers were designed to make consumers think the offers were part of the initial purchase, rather than a new transaction with a new seller.

(6) Third party sellers charged millions of consumers for membership clubs without ever obtaining consumers' billing information, including their credit or debit card information, directly from the consumers. Because third party sellers

S. 3386—2

acquired consumers' billing information from the initial merchant through "data pass", millions of consumers were unaware they had been enrolled in membership clubs.

(7) The use of a "data pass" process defied consumers' expectations that they could only be charged for a good or a service if they submitted their billing information, including their complete credit or debit card numbers.

(8) Third party sellers used a free trial period to enroll members, after which they periodically charged consumers until consumers affirmatively canceled the memberships. This use of "free-to-pay conversion" and "negative option" sales took advantage of consumers' expectations that they would have an opportunity to accept or reject the membership club offer at the end of the trial period.

## SEC. 3. PROHIBITIONS AGAINST CERTAIN UNFAIR AND DECEPTIVE INTERNET SALES PRACTICES.

(a) REQUIREMENTS FOR CERTAIN INTERNET-BASED SALES.—It shall be unlawful for any post-transaction third party seller to charge or attempt to charge any consumer's credit card, debit card, bank account, or other financial account for any good or service sold in a transaction effected on the Internet, unless—

(1) before obtaining the consumer's billing information, the post-transaction third party seller has clearly and conspicuously disclosed to the consumer all material terms of the transaction, including—

(A) a description of the goods or services being offered;

(B) the fact that the post-transaction third party seller is not affiliated with the initial merchant, which may include disclosure of the name of the post-transaction third party in a manner that clearly differentiates the post-transaction third party seller from the initial merchant; and

(C) the cost of such goods or services; and

(2) the post-transaction third party seller has received the express informed consent for the charge from the consumer whose credit card, debit card, bank account, or other financial account will be charged by—

(A) obtaining from the consumer—

(i) the full account number of the account to be charged; and

(ii) the consumer's name and address and a means to contact the consumer; and

(B) requiring the consumer to perform an additional affirmative action, such as clicking on a confirmation button or checking a box that indicates the consumer's consent to be charged the amount disclosed.

(b) PROHIBITION ON DATA-PASS USED TO FACILITATE CERTAIN DECEPTIVE INTERNET SALES TRANSACTIONS.—It shall be unlawful for an initial merchant to disclose a credit card, debit card, bank account, or other financial account number, or to disclose other billing information that is used to charge a customer of the initial merchant, to any post-transaction third party seller for use in an Internet-based sale of any goods or services from that post-transaction third party seller.

S. 3386—3

    (c) APPLICATION WITH OTHER LAW.—Nothing in this Act shall be construed to supersede, modify, or otherwise affect the requirements of the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) or any regulation promulgated thereunder.

    (d) DEFINITIONS.—In this section:

        (1) INITIAL MERCHANT.—The term "initial merchant" means a person that has obtained a consumer's billing information directly from the consumer through an Internet transaction initiated by the consumer.

        (2) POST-TRANSACTION THIRD PARTY SELLER.—The term "post-transaction third party seller" means a person that—

            (A) sells, or offers for sale, any good or service on the Internet;

            (B) solicits the purchase of such goods or services on the Internet through an initial merchant after the consumer has initiated a transaction with the initial merchant; and

            (C) is not—

                (i) the initial merchant;

                (ii) a subsidiary or corporate affiliate of the initial merchant; or

                (iii) a successor of an entity described in clause (i) or (ii).

**SEC. 4. NEGATIVE OPTION MARKETING ON THE INTERNET.**

    It shall be unlawful for any person to charge or attempt to charge any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature (as defined in the Federal Trade Commission's Telemarketing Sales Rule in part 310 of title 16, Code of Federal Regulations), unless the person—

        (1) provides text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information;

        (2) obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction; and

        (3) provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account.

**SEC. 5. ENFORCEMENT BY FEDERAL TRADE COMMISSION.**

    (a) IN GENERAL.—Violation of this Act or any regulation prescribed under this Act shall be treated as a violation of a rule under section 18 of the Federal Trade Commission Act (15 U.S.C. 57a) regarding unfair or deceptive acts or practices. The Federal Trade Commission shall enforce this Act in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated into and made a part of this Act.

    (b) PENALTIES.—Any person who violates this Act or any regulation prescribed under this Act shall be subject to the penalties and entitled to the privileges and immunities provided in the Federal Trade Commission Act as though all applicable terms and provisions of the Federal Trade Commission Act were incorporated in and made part of this Act.

S. 3386—4

(c) AUTHORITY PRESERVED.—Nothing in this section shall be construed to limit the authority of the Commission under any other provision of law.

**SEC. 6. ENFORCEMENT BY STATE ATTORNEYS GENERAL.**

(a) RIGHT OF ACTION.—Except as provided in subsection (e), the attorney general of a State, or other authorized State officer, alleging a violation of this Act or any regulation issued under this Act that affects or may affect such State or its residents may bring an action on behalf of the residents of the State in any United States district court for the district in which the defendant is found, resides, or transacts business, or wherever venue is proper under section 1391 of title 28, United States Code, to obtain appropriate injunctive relief.

(b) NOTICE TO COMMISSION REQUIRED.—A State shall provide prior written notice to the Federal Trade Commission of any civil action under subsection (a) together with a copy of its complaint, except that if it is not feasible for the State to provide such prior notice, the State shall provide such notice immediately upon instituting such action.

(c) INTERVENTION BY THE COMMISSION.—The Commission may intervene in such civil action and upon intervening—

(1) be heard on all matters arising in such civil action; and

(2) file petitions for appeal of a decision in such civil action.

(d) CONSTRUCTION.—Nothing in this section shall be construed—

(1) to prevent the attorney general of a State, or other authorized State officer, from exercising the powers conferred on the attorney general, or other authorized State officer, by the laws of such State; or

(2) to prohibit the attorney general of a State, or other authorized State officer, from proceeding in State or Federal court on the basis of an alleged violation of any civil or criminal statute of that State.

(e) LIMITATION.—No separate suit shall be brought under this section if, at the time the suit is brought, the same alleged violation is the subject of a pending action by the Federal Trade Commission or the United States under this Act.


*Speaker of the House of Representatives.*


*Vice President of the United States and*
*President of the Senate.*